Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
cbc@caddellchapman.com
Amy E. Tabor (SBN 297660)
aet@caddellchapman.com
John B. Scofield, Jr. (pro hac vice)
jbs@caddellchapman.com
CADDELL & CHAPMAN
P.O. Box 1311
Monterey, CA 93942
Tel.: (713) 751-0400
Fax: (713) 751-0906

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALI NILFORUSHAN, <br><br> *Plaintiff*, <br><br> *v.* <br><br> U.S. CENTER FOR SAFESPORT, <br><br> *Defendant*. | Case No. 23-CV-0353-AGS(BLM) <br><br> **PLAINTIFF'S RESPONSE TO MOTION TO DISMISS** <br><br> Date: May 5, 2023 <br> Crtm: 5C (5th Floor) <br> Judge: Hon. Andrew G. Schopler <br><br> NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

# TABLE OF CONTENTS

I.    Introduction ...................................................................................................1

II.   Factual Background .........................................................................................2

    A.    Motivated by Malice, Defendant Has Retaliated Against Plaintiff for His Witness Statement in a Separate Matter that Conflicted with Defendant's Agenda to Find for the Claimant in that Matter. ...............2

    B.    February 2021: First Allegation of Misconduct, Refuted by *All* PercipientWitnesses, Still Pending After 23 Months............................3

    C.    Early March 2021: SafeSport Whistleblower Employees Warn Plaintiff That He Is Being Targeted. ........................................................4

    D.    Late March 2021: Second Allegation of Misconduct, Refuted by Expert Polygraph Evidence, Still Pending After Two Years.................5

    E.    January 2022: Claimant B Advises Defendant She Will Not Participate in a Claim Against Plaintiff, and Defendant Withholds This Information for 14 Months..................................................................6

    F.    February 2022: Third and Fourth Allegations of Misconduct, Refuted and Unsupported by all Witnesses, Still Pending 13 Months Later .....................................................................................................6

    G.    November 2022: Fifth Allegation of Misconduct, Details which SafeSport Refused to Advise Plaintiff Prior to His Interview, Still Pending.............................................................................................7

III.  Standard of Review .........................................................................................9

IV.   Argument and Authorities ...............................................................................9

    A.    The SafeSport Act and the SafeSport Code Provide Plaintiff a Right to Pursue Claims Arising from Defendant's Actual Malice. .......9

    B.    To the Limited Extent That He Had a Right of Arbitration, Plaintiff Timely Exhausted Administrative Remedies Before Filing This Lawsuit. ...........................................................................................11

    C.    Defendant's Malicious Refusal to Establish and/or Follow Procedures Supporting Due Process, Rather than Rendering an Eligibility Decision, Serves as the Foundation of This Case...............15

    D.    Defendants' "Private Right of Action" Argument is Irrelevant: Plaintiff Only Pleads Claims Arising Under State Law. ....................17

i                                        Case No. 23-CV-0353-AGS(BLM)

E.     Plaintiff's Claims Do Not Arise from an Eligibility Decision .............18

F.     Defendant's Outrageous Conduct is a Proper Foundation for
        Plaintiff's Claim for Intentional Infliction of Emotional Distress. .......20

        1.     Plaintiff Has Alleged Detailed Facts Showing Defendant's
                Outrageous Conduct, Which Is a Question of Fact for
                the Jury. ...................................................................................20

        2.     Plaintiff Has Adequately Alleged Actual Malice, Which Is a
                Question of Fact for the Jury. ....................................................22

G.     Defendant's Failure to Follow Its Own Processes Serves as a
        Proper Basis for Declaratory Relief. ....................................................23

V.     Conclusion ....................................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
    300 U.S. 227 (1937) ..................................................................24

*Arizona Students' Ass'n v. Arizona Bd. of Regents*,
    824 F.3d 858 (9th Cir. 2016)......................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................9

*Augustine v. U.S.*,
    704 F.2d 1074 (9th Cir. 1983)....................................................9

*Bilbrey by Bilbrey v. Brown*,
    738 F.2d 1462 (9th Cir.1984)..............................................23, 24

*Black v. Correa*,
    No. 07–00299 DAE–LEK, 2007 WL 3195122
    (D. Haw. Oct. 30, 2007) ...........................................................23

*Britz Fertilizers, Inc. v. Bayer Corp.*,
    665 F.Supp.2d 1142 (E.D.Cal.2009) ........................................24

*Callaghan v. US Center for Safe Sport*,
    No. 2:18-cv-336-FtM-99CM, 2018 WL 4107951
    (M.D. Fla. Aug. 29, 2018) ...................................................13, 14

*Chaconas v. J.P. Morgan Chase Bank*,
    713 S. Supp. 2d 1180 (S.D. Cal. 2010) .....................................21

*Duronslet v. Cty. of Los Angeles*,
    266 F. Supp. 3d 1213 (C.D. Cal. 2017)......................................20

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014).......................................................9

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ...................................................25

*Garcia v. U.S.*,
    77 F.3d 488 (9th Cir. 1996).......................................................21

*Gasho v. United States*,
    39 F.3d 1420 (9th Cir. 1994) ...........................................................................23

*Gilbert v. U.S. Olympic Comm*.,
    No. 18-cv-00981-CMA-MEH, 2019 WL 10252758
    (D. Colo. March 6, 2019) ................................................................................19

*Gressett v. Contra Costa Cty*.,
    No. 12-cv-3798-EMC, 2013 WL 6671795
    (N.D. Cal. Dec. 18, 2013) ...............................................................................22

*Harding v. U.S. Figure Skating Ass'n*,
    851 F. Supp. 1476 (D. Or. 1994) ....................................................................17

*Harmon v. City of Glendale*;
    2007 WL 97065554 (C.D. Cal. Dec. 19, 2007) ..............................................23

*Helgeson v. Am. Int'l Group, Inc*.,
    44 F. Supp. 2d 1091 (S.D. Cal. 1999) ............................................................20

*Jones v. AIG Risk Mgmt., Inc*.,
    726 F. Supp. 2d 1049 (N.D. Cal. 2010)......................................................20, 21

*Kindley v. Flagstar Bank*,
    No. 04-CV-0319-IEG (WMC), 2004 WL 5631084
    (S.D. Cal. Oct. 28, 2004) ................................................................................21

*Laizure v. Washington Cty. by and through Tran*,
    No. 3:17-cv-01254-SB, 2019 WL 6120492
    (D. Or. Nov. 18, 2019) ....................................................................................23

*Lee v. U.S. Taekwondo Union*,
    331 F. Supp. 2d 1252 (D. Haw. 2004) ...........................................................25

*Maryland Cas. Co. v. Pacific Coal & Oil Co*.,
    312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941) .........................................24

*McCarthy v. Madigan*,
    503 U.S. 140 (1992) ........................................................................................14

*McKee v. Gen'l Motors Co.*,
    601 F. Supp. 3d 901 (W.D. Wash. 2022) .......................................................25

RESPONSE TO MOTION TO DISMISS

*Miller v. Bank of Am., N.A.*,
  No. 1:21-CV-00337-JLT, 2022 WL 3704093
  (E.D. Cal. Aug. 26, 2022)...................................................................17

*Miller v. Watson*,
  No. 3:18-cv-00562-SB, 2019 WL 1871011
  (D. Or. Feb. 12, 2019) ........................................................................22

*Neveu v. City of Fresno*,
  392 F. Supp. 2d 1159 (E.D. Cal. 2005)............................................22

*Polich v. Burlington Northern, Inc.*,
  942 F.2d 1467 (9th Cir. 1991).............................................................25

*Progressive West. Ins. Co. v. Dallo*,
  2008 WL 413752 (S.D. Cal. Feb. 14, 2008) .....................................21

*Rhoades v. Avon Prods., Inc.*,
  504 F.3d 1151 (9th Cir. 2007)..........................................................24

*Rosen v. Walters*,
  719 F.2d 1422 (9th Cir. 1983) .............................................................9

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .............................................................9

*Sanderson v. U.S. Ctr. For SafeSport, Inc.*,
  No. 21-cv-01771-CMA, 2021 WL 3206322
  (D. Colo. July 29, 2021) .....................................................................15

*Slaney v. Int'l Amateur Athletic Federation*,
  244 F.3d 580 (7th Cir. 2001)..............................................16, 17, 24

*Societe de Conditionnement v. Hunter Eng. Co.*,
  655 F.2d 938 (9th Cir.1981).............................................................24

*Tarr v. Narconon Fresh Start*,
  72 F. Supp. 3d 1138 (D. Nev. 2014) ................................................21

*United States v. Connell*,
  613 F. Supp. 3d 1227 (N.D. Cal. 2020)...........................................14

*Warren v. WinCo Foods, LLC,*
    No. 1:22-cv-00594-SAB, 2022 WL 3026785
    (E.D. Cal. Aug. 1, 2022) ................................................................. 23

*Wilhelm v. Knox Cty., Ohio,*
    No. 2:03-CV-786, 2005 WL 1126817
    (S.D. Ohio May 12, 2005) ............................................................... 21

*Wolfe v. Strankman,*
    392 F.3d 358 (9th Cir. 2004) ............................................................ 9

**STATUTES**

36 U.S.C. § 220501(a) ....................................................................... 9

36 U.S.C. § 220503(8) ................................................................. 10, 24

36 U.S.C. § 220541(a)(1) .................................................................. 17

36 U.S.C. § 220541(a)(1)(B) ............................................................ 10

36 U.S.C. § 220541(a)(1)(H) ............................................................ 12

36 U.S.C. § 220541(a)(2)(C) ....................................................... 17, 18

36 U.S.C. § 220541(c)(2) .................................................................. 12

36 U.S.C. § 220541(d) ................................................................... 1, 10

36 U.S.C. § 220541(d)(1) .................................................................. 14

36 U.S.C. § 220541(d)(2) ........................................................... *passim*

36 U.S.C. § 220541(d)(3)(B) ............................................................ 18

36 U.S.C. § 25041(a)(1)(C) ...................................................... 10, 24, 25

36 U.S.C. § 220541(a)(1)(D) .................................................... 10, 24, 25

36 U.S.C. § 220541(a)(1)(E) ...................................................... 10, 24

**RULES**

FED. R. CIV. P. 12(b)(1) ..................................................................... 9

FED. R. CIV. P. 12(b)(6) .................................................................. 1, 9

# I.  INTRODUCTION

Defendant argues that it should be absolutely immune from liability for egregious misuse of its powers, leaving Plaintiff Ali Nilforushan facing endless investigations despite no credible evidence against him, and depriving him of even so much as a decision that would at least allow him an administrative remedy to challenge whatever action SafeSport might take. In a statute SafeSport fails to cite, however, Congress has mandated that limitations on liability for claims of reputational damage against SafeSport "shall not apply" where, as here, Defendant "acted with actual malice" and/or took action outside the scope of its statutory duties. 36 U.S.C. § 220541(d). Because Plaintiff has provided a detailed factual account that Defendant acted with actual malice, Plaintiff has more than adequately pled claims that sustain the challenge under FED. R. CIV. P. 12(b)(6), *et seq*., and demonstrate that the Court has subject matter jurisdiction over this case. Defendant should be required to answer Plaintiff's claims for intentional infliction of emotional distress and bad faith persecution of Plaintiff.

In a clear, deliberate violation of its processes, Defendant maliciously persecuted Plaintiff in retaliation for his witness participation in a separate investigation. For over two years now, Defendant has "investigated" Plaintiff for numerous unfounded allegations—some dating back over two decades—and steadfastly refused to render an eligibility decision about Plaintiff, thereby causing him extreme emotional distress and public humiliation. Unlike the cases on which Defendant attempts to rely, this is not a case of eligibility disagreement; instead, Plaintiff has adequately and properly pled detailed facts showing Defendant's "actual malice" is at the root of its supposed investigations. Defendant has continued to coerce witnesses to provide false information, deprive Plaintiff of due process, and manufacture claims against Plaintiff, all while refusing to dismiss the unfounded allegations against him. In response, with indisputable evidence, Plaintiff has

RESPONSE TO MOTION TO DISMISS

demonstrated time and again that the allegations are false, yet Defendant has demonstrated no intention to dismiss the baseless and disproven allegations.

Given his detailed allegations of retaliation, Plaintiff has properly pled claims that arise from Defendant's actual malice. 36 U.S.C. § 220541(d)(2). For all these reasons, the Court should deny Defendant's motion under the unique and egregious facts of this case.

## II.  FACTUAL BACKGROUND

Plaintiff is a professional equestrian and former Olympian show jumper who now makes his living training high-level equestrians, many who compete at the World Cup level and aspire to compete on Nations Cup and Olympic teams. (Dkt. 1-7 ¶¶ 4, 22.) Plaintiff is also a highly successful equestrian show operator in California, licensed with the United States Equestrian Federation ("USEF"). (*Id*.)

### A.  Motivated by Malice, Defendant Has Retaliated Against Plaintiff for His Witness Statement in a Separate Matter That Conflicted with Defendant's Agenda to Find for the Claimant in That Matter.

This case arises from SafeSport's unrelenting and malicious persecution of Plaintiff in retaliation for his witness statement in a separate SafeSport investigation. (Dkt. 1-7 ¶ 1.) In 2020, Defendant investigated a claim against an equestrian involving an alleged incident that occurred in the early 2000s ("2020 SafeSport Investigation"). (*Id*. ¶ 23.) Plaintiff provided a factual witness interview to SafeSport that supported the accused. (*Id*.) When Plaintiff's witness account and criticism of Defendant's investigation were reported to a SafeSport employee in a leadership position, the employee stated, "Well, we may have to investigate Mr. Nilforushan." (*Id*.)[1] From that point forward, Defendant, motivated by malice and resentment for

---

[1] Also, regarding the 2020 SafeSport Investigation, another witness reported that the SafeSport investigator attempted to pressure her into giving an untruthful statement supporting the claimant's allegations. (Dkt. 1-7 ¶ 23.) She reported that the investigator was "trying to put words into my mouth." (*Id*.) This witness, however,

RESPONSE TO MOTION TO DISMISS

Plaintiff's participation in the 2020 SafeSport Investigation, unleashed a campaign against Plaintiff that has involved an unrelenting wave of unfounded and still unresolved allegations, all of which Plaintiff has refuted in detail.

## B.  February 2021: First Allegation of Misconduct, Refuted by *All* Percipient Witnesses, Still Pending After 23 Months.

Following Plaintiff's participation in the 2020 SafeSport Investigation, Defendant initiated its first (of many) investigations against Plaintiff in February 2021. (Dkt. 1-7 ¶¶ 5, 25.) The investigation involved a verbal harassment allegation from an intoxicated claimant ("Claimant A") who confronted Plaintiff due to her incorrect belief that Plaintiff somehow disagreed with SafeSport's investigation of another Olympic equestrian, Rich Fellers. (*Id*. ¶ 5.) Regarding Claimant A's allegations, SafeSport was aware that, in addition to Plaintiff, there were three eyewitnesses to the event, all of whom refuted Claimant A's portrayal of the confrontation. (*Id*. ¶¶ 5, 25(A)-(C).) Yet, SafeSport initially opted to interview only one of the witnesses—a close friend of Claimant A—who was interviewed and subsequently provided a written description of the events that squarely refuted the underlying allegation and identified all witnesses to the incident. (*Id*. ¶¶ 5, 25(A), 27.) Regarding the two other witnesses, neither of whom SafeSport contacted prior to imposing the temporary measure of suspending Plaintiff from equestrian sports (described further below), each unilaterally submitted to SafeSport written statements also refuting the underlying complaint. (*Id*. a¶¶ 5, 25(B)-(C).)

With no prior notice to Plaintiff, and no opportunity to explain the February 13, 2021 incident, and ignoring availability of three eyewitnesses, in a February 19, 2021 public announcement, SafeSport temporarily suspended Plaintiff from equestrian sports during the middle of an international horse show (at which Plaintiff

---

refused, instead providing a truthful account of what she recalled, which also happened to support the accused. (*Id.*)

was training multiple high-level equestrians) and publicly humiliated him based on claims that SafeSport knew were groundless and bereft of any credible evidentiary support. (*Id.* ¶¶ 6, 30, 32.) Due to the suspension, Plaintiff was required to immediately leave the showgrounds, which damaged his working relationship with his riders. (*Id.* ¶ 31.) Moreover, because SafeSport is primarily associated with investigation of allegations of sexual abuse of minor athletes, the incorrect—but predictable and logical—assumption in the equestrian community was that Plaintiff was involved in the sexual abuse of a minor. (*Id.* ¶¶ 31-32.) The public notice and resulting inferences not only severely damaged Plaintiff's professional and personal reputation, but caused him severe emotional distress in the form of anguish, nervousness, grief, sleeplessness, anxiety, worry, shock, and humiliation. (*Id.*)

Ultimately, with no evidentiary basis for the temporary ban placed on Plaintiff and facing the pressure of Plaintiff's insistence that he be given an emergency hearing under SafeSport's own rules, SafeSport lifted the ban several days later. (*Id.* ¶¶ 6, 28.) However, unwilling to clear Plaintiff's name, SafeSport left the investigation "open" and issued a "no contact" order against Plaintiff instructing him not to contact the widely discredited claimant. (*Id.* ¶¶ 6, 28.)

## C. Early March 2021: SafeSport Whistleblower Employees Warn Plaintiff That He Is Being Targeted.

On March 7, 2021, Plaintiff received an unsolicited email from whistleblowers within SafeSport with the subject line of "Mr. N: SafeSport targeted you." (*Id.* ¶ 38.) The email included facts that could not have been known to anyone outside of SafeSport, such as the identity of Plaintiff's SafeSport attorney and that Plaintiff had previously (and confidentially) submitted a witness statement in the 2020 SafeSport Investigation of another equestrian. (*Id.*) The first email from the whistleblowers included as follows:

> We work inside of SafeSport in Denver. We must remain anonymous. We fear for our jobs. You were targeted by SafeSport because you gave favorable evidence in support of another Respondent in another

> equestrian case. As you now know, SafeSport is fundamentally unfair. There is no actual due process of law. Your name was destroyed without any notice or hearing … . . . . Like we said, we fear for our jobs. We know that leadership monitors e-mails and phone calls for leaks. Our paranoia is justified.

(*Id*.) Subsequent emails from the whistleblowers dated May 7-17, 2021, further established Defendant's malice and the SafeSport whistleblowers' credibility. For example:

> "You need to know that one woman in SafeSport, Heather O'Brien, was behind the assault on you. She manipulates the other weaklings inside our company to do her bidding."

> "You simply do not understand who you are dealing with. Most of our leaders do not care if you are innocent. They only care that you are a wealthy male and that you must be diminished. …"

> "[A]sk yourself one more thing, 'How many other people must be hurt before someone stands up and fights back?'"

(*Id*. at ¶ 39.)

### D. Late March 2021: Second Allegation of Misconduct, Refuted by Expert Polygraph Evidence, Still Pending After Two Years.

Unable to establish the credibility of Claimant A's allegations against Plaintiff, Defendant transitioned to developing a new, but equally spurious, claim. On March 30, 2021, Defendant provided notice of an allegation based on a public and well-known relationship Plaintiff had with his former girlfriend ("Claimant B") 14 years prior, in 2007, when both parties were adults. (*Id*. ¶ 40.) On May 6, 2021, determined to disprove the allegation involving Claimant B, Plaintiff took the extraordinary step of submitting to a polygraph examination with a court-approved expert, which conclusively demonstrated the new allegation to be false. (*Id*. ¶ 41.) Notwithstanding the polygraph results, Defendant refuses to administratively close the March 2021 investigation. (*Id*. ¶ 42.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### E. January 2022: Claimant B Advises Defendant She Will Not Participate in a Claim Against Plaintiff, and Defendant Withholds This Information for 14 Months.

On January 23, 2023, Defendant interviewed Plaintiff regarding additional, spurious allegations of verbal harassment that allegedly occurred years prior (discussed more below). (*Id*. ¶ 43.) During the interview, Defendant's investigator, Kurt Fabrizio, admitted that 12 months prior, on January 22, 2022, Claimant B advised Defendant she would not participate in an investigation of Plaintiff. (*Id*. ¶ 45.) When Plaintiff and his lawyer asked Fabrizio why such critical information had not been previously disclosed to Plaintiff—who Defendant knew (through an April 2022 letter sent from Plaintiff to Defendant) was suffering extreme emotional distress—Fabrizio was unable to provide any rational explanation. (*Id*. ¶ 54.) Remarkably, Defendant led Plaintiff to believe that Claimant B was actively pursuing allegations against Plaintiff for an additional 12 months by including a reference to Claimant B in the February and November 2022 Notices of Allegations and by continuing its directive that Plaintiff not contact Claimant B. (*Id*. ¶ 46.)

### F. February 2022: Third and Fourth Allegations of Misconduct, Refuted and Unsupported by all Witnesses, Still Pending 13 Months Later

In February 2022, Defendant provided Plaintiff with—yet again—a Notice of Additional Allegations, this time asserting that in November 2021 Plaintiff supposedly committed an "abuse of process" by allegedly disclosing Claimant B as a SafeSport claimant to another person, Witness 1. (*Id*. ¶ 47.) Defendant also alleged that, in February 2021, Plaintiff committed an abuse of process by purportedly influencing Witness 3, one of several percipient witnesses refuting Claimant A's account of her drunken confrontation of Plaintiff in February 2021. (*Id*.)

Plaintiff refuted the new, February 2022 allegations by written response through his counsel, dated April 1, 2022. (*Id*. ¶ 48.) Plaintiff explained that Witness 1 actually advised *him* that she was aware of the allegations relating to Claimant B.

(*Id.*) More importantly, however, subsequent to giving her witness statement against Plaintiff, in November 2022 Witness 1 reported that she had been relentlessly pressured and coerced by Kurt Fabrizio (Defendant's investigator) and another witness (a business competitor of Plaintiff), to give false testimony against Plaintiff. (*Id.* ¶ 10.) Witness 1 further reported that while she succumbed to such pressure by giving Fabrizio inaccurate information against Plaintiff, she ultimately decided that she could no longer participate in ruining Plaintiff's career and personal life by providing false information about Plaintiff. (*Id.*)[2]

Also in the April 1, 2022 letter, Defendant was advised that the unfounded allegations against Plaintiff "ha[d] caused him enormous emotional distress" and that '[t]hroughout the past year, his mental health, business and personal relationships have suffered." (*Id.* ¶ 50.) Defendant never responded to the April 1, 2022 letter. (*Id.* ¶ 51.) Again, despite Plaintiff's cooperation with the investigation, overwhelming evidence submitted by multiple, credible witnesses, and Plaintiff's correction of others' accounts, Defendant still refuses to administratively close the February 2022 allegations. (*Id.*)

## G. November 2022: Fifth Allegation of Misconduct, Details which SafeSport Refused to Advise Plaintiff Prior to His Interview, Still Pending

Unable to substantiate any of its pending allegations against Plaintiff, on November 9, 2022, Defendant manufactured yet another Notice of Additional Allegations and Continuation of Temporary Measures, this time alleging that "multiple witnesses observed and/or experienced verbal harassment similar to allegation [sic] made by Claimant A," the drunken equestrian who confronted

---

[2] Plaintiff also thoroughly refuted the allegation that he somehow attempted to influence Witness 3's account of the February 13, 2021 events. Not only has Witness 3 never indicated that the written observations she submitted to Defendant resulted from Plaintiff's pressure or influence, but also her observations were corroborated by all other percipient witnesses. (*Id.* ¶ 10.)

Plaintiff in February 2021. (*Id*. ¶ 52.) Witness 2, an equestrian show operator and direct competitor of Plaintiff, is one of the "multiple witnesses" alleging verbal harassment. (*Id*.) Much like Witness 1, who was coerced by Defendant's investigator Fabrizio to provide false information concerning Plaintiff, Witness 2 has now come forward stating that she intends to contact Fabrizio, "to recant." (*Id*.)

At an interview of Plaintiff on January 23, 2023, Defendant's investigator shared that while his investigation of Plaintiff had concluded in April 2022, "Legal" nonetheless decided to continue to pursue claims against Plaintiff along other lines: namely to use nine other witnesses to somehow resurrect Claimant A's universally refuted—by all percipient witnesses—allegations of verbal abuse. (*Id*. ¶ 55.) None of the "new" witnesses were witnesses to Claimant A's uninvited verbal assault on Plaintiff—rather, such witnesses generally claimed that at one time or another in the past (some accounts dated back to at least 2007), they had witnessed or heard second-hand that Plaintiff had used curse words on occasion or made statements that they personally found offensive. (*Id*.)[3] Nothing Investigator Fabrizio shared about any of these dated witness accounts supports or bears any relevance on Claimant A's already-refuted allegations from February 2021 against Plaintiff. (*Id*.)[4]

---

[3] Other witnesses include a former business associate who Plaintiff alleges stole money from Plaintiff and a struggling business competitor on the West coast. Other witnesses relied on secondhand information such as "I heard from X that Plaintiff once said [something offensive]." (Dkt. 1-7 at ¶ 55.) One witness, who Plaintiff witnessed making an unwanted physical advance on Plaintiff's wife while at a social gathering at Plaintiff's home, claimed that Plaintiff was volatile and aggressive. (*Id.*) Another witness said that in 2007, after Plaintiff completed a grand prix jumping round that did not go well for him, Plaintiff cursed *at himself* as he was very unhappy with his round. (*Id.*)

[4] Witness 2 also recently volunteered to Plaintiff, "I don't want to have anything to do with this anymore. I will call Kurt [Fabrizio] tomorrow and tell him to back off." (Dkt. 1-7 at ¶ 11.)

### III.  STANDARD OF REVIEW

On a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016); *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (cleaned up) (holding that "a court should 'assume the[ ] veracity' of 'well pleaded factual allegations' and 'determine whether they plausibly give rise to an entitlement to relief'") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)). For purposes of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983).

In considering a facial attack on subject-matter jurisdiction under FED. R. CIV. P. 12(b)(1), this Court accepts the allegations in the complaint as true and views them in the light most favorable to the plaintiff. *See, e.g., Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "Where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983).

### IV.  ARGUMENT AND AUTHORITIES

**A. The SafeSport Act and the SafeSport Code Provide Plaintiff a Right to Pursue Claims Arising from Defendant's Actual Malice.**

The Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220501(a), *et seq.*, was enacted in 1978 to regulate amateur athletics. Under the statute, one of the purposes of the United States Olympic and Paralympic Committee is:

> "to provide *swift* resolution of conflicts and disputes involving amateur athletes, national governing bodies, and amateur sports organizations, and protect the opportunity of any amateur athlete, coach, trainer,

manager, administrator, or official to participate in amateur athletic competition."

36 U.S.C. § 220503(8) (emphasis added). In March 2017, the USOC chartered Safe Sport. On February 14, 2018, the SafeSport Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act, Pub. L. No. 126, 115th Cong., 2d Session, 132 Stat 318 ("SafeSport Act"), was signed into law. The SafeSport Act, as amended, provides that Defendant "shall … exercise jurisdiction over" the USOC "with regard to safeguarding amateur athletes against abuse, including physical, emotional, and sexual abuse, in sports." 36 U.S.C. § 220541(a)(1)(B). The SafeSport Act provides that Defendant develop "policies and procedures" to prevent the abuse of amateur athletes participating in amateur sports and that it establish "mechanisms… for the reporting, investigating, and resolution … of alleged sexual abuse in violation of the Center's policies and procedures." 36 U.S.C. § 25041(a)(1)(C) and (D). The act also mandates, however, that Defendant must "ensure" that these "mechanisms" provide for "fair notice and opportunity to be heard." 36 U.S.C. § 220541(a)(1)(E).

Finally, and particularly germane here, the statute, as amended in 2018, specifically affords Plaintiff a right to pursue litigation of state law claims where, as here, the targeting and investigation arises from Defendant's "actual malice." 36 U.S.C. § 220541(d)(2). In its Motion to Dismiss, Defendant inexplicably omits any citation to or analysis of the most relevant and critical statutory provision in the case, 36 U.S.C. § 220541(d)(2). Enacted in 2018, the SafeSport Act provides that, if Defendant acted with "actual malice" in causing damage to the participant or his reputation, there is no limitation on Defendant's liability for breach of state law and the recovery of damages in a civil action. 36 U.S.C. § 220541(d). Here, as demonstrated above, Plaintiff has provided compelling, detailed allegations of Defendant's malice, including: Defendant's investigation(s) are prompted by

retaliatory persecution of Plaintiff (Dkt. 1-7 ¶¶ 1, 23); Defendant's own employees have warned that Defendant, in retaliation, is targeting Plaintiff without due process (*id*. ¶¶ 38-39); Defendant has conducted a limited, results-oriented investigation (*id*. ¶ 27); Defendant has attempted to intimidate and/or coerce athletes and competitors to manufacture claims against Plaintiff (*id*. ¶¶ 10, 24, 52); Defendant has ignored evidence refuting the claims against Plaintiff and refused to close any of the investigations against Plaintiff (*id*. ¶¶ 5, 7, 9, 12, 25, 28, 30, 33, 37, 42, 51); and Defendant delayed advising Plaintiff that one of the claims had been dropped for over a year (*id*. ¶¶ 45-46, 54). In accordance with 36 U.S.C. § 220541(d)(2), Plaintiff has stated a claim for violations of state law, and SafeSport may not claim any immunity where, as here, Plaintiff has pled detailed facts showing actual malice.

## B. To the Limited Extent That He Had a Right of Arbitration, Plaintiff Timely Exhausted Administrative Remedies Before Filing This Lawsuit.

This Court should reject Defendant's argument that Plaintiff's Complaint should be dismissed for failure to exhaust administrative remedies because Plaintiff does not have a right, much less an obligation, to pursue arbitration under the SafeSport Code instead of initiating this litigation. The SafeSport Code does not provide recourse for the malicious and abusive persecution underlying this litigation; more importantly, Defendant's own code does not provide for arbitration of claims for intentional infliction of emotional distress and its refusal to dismiss groundless and disproven allegations. Arbitration is permitted to address an athlete or trainer's eligibility to participate in sport; Plaintiff's eligibility is not at issue here. There is no corresponding right in arbitration to redress Defendant's targeting of Plaintiff, manufacture of claims, refusal to close a two-year-old investigation, and an award of damages for intentional infliction of emotional distress.[5] Here, Defendant refuses

---

[5] A participant can raise limited, specific procedural due processes through

to close its unfounded investigation(s), so there is nothing ripe for review by arbitration. Specifically, the SafeSport Code only permits an arbitration challenge to address sanctions that affect the opportunity to participate in the sport (*e.g.*, suspension). (SafeSport Code § XII(A)(4) (Dkt. 8-3 at 28); *see also id*. § XI(H)(3) ((Dkt. 8-3 at 24); allowing Plaintiff to request a hearing of a decision by Defendant if a violation is found); *id*. § XI(Q) (Dkt. 8-3 at 26-27; setting deadline to request arbitration hearing upon Defendant's issuance of a decision).)

The limited opportunity for arbitration, not even available here, is not intended to be "construed as altering, superseding, or otherwise affecting the right of an individual within [Defendant's] jurisdiction to pursue civil remedies through the courts for personal injuries arising from abuse in violation of [Defendant's] policies and procedures."[6] In fact, the enacting statute specifically contemplates the opportunity to pursue "civil remedies" through the courts. *Id*.; *see also* 36 U.S.C. § 220541(d)(2). Similarly, section XI(E)(2) of the SafeSport Code notes that participation in Defendant's processes does not restrict a person's rights to file claims in any court regarding the underlying allegations. (Dkt. 8-3 at 22.)

Defendant inaccurately quotes the SafeSport Code in an improper attempt to support its argument. (Dkt. 8-1 at 15.[7]) Citing to section XIV(40)(a) of the SafeSport Code (Dkt. 8-3 at 42), Defendant claims that the code provides "a hearing can be

---

arbitration, none of which are at issue here. Procedural due process rights include: "(i) the provision of written notice of the allegations against the individual; (ii) a right to be represented by counsel or other advisor; (iii) an opportunity to be heard during the investigation; (iv) in a case in which a violation is found, a reasoned written decision by the Center; and (v) the ability to challenge, in a hearing or through arbitration, interim measures or sanctions imposed by the Center." 36 U.S.C. § 220541(a)(1)(H); see also SafeSport Code § XIV(15) (Dkt. 8-3 at 33-34).

[6] 36 U.S.C. § 220541(c)(2).

[7] Citations to the page numbers of pleadings are to the page number in the file-stamped header.

RESPONSE TO MOTION TO DISMISS

requested '[a]t any time after Notice of a Temporary Measure Notice of Allegations and Temporary Measures….'" (Dkt. 8-1 at 15 (ellipsis in original).) Thus, Defendant argues that Plaintiff could have requested an arbitration hearing at any time after each instance that Defendant notified him of contrived, new allegations. (*Id*. at 15-16.)

> However, the SafeSport Code actually provides:
>
> "At any time after Notice of a Temporary Measure, ***when those temporary measures materially affect the opportunity to participate (e.g., suspension)***, Respondent may request a hearing . . . ."

(SafeSport Code § XIV(40)(a) (Dkt. 8-3 at 42; emphasis added).) Defendant omits this important clause, which is fundamental to, and disposes of, the argument. Defendant does not contest that Plaintiff timely requested a hearing the only time Defendant imposed a penalty limiting his participation in equestrian sports (*i.e.*, suspended him). (Dkt. 8-1 at 15.) In each other instance, Defendant has notified Plaintiff of new pending issues that only limited his rights to contact involved claimants or witnesses. (*Id*. at 15-16.) These no-contact directives not only do not "materially affect the opportunity to participate," but in fact, Plaintiff has remained eligible and continuously participated in the equestrian sport during the pendency of Defendant's investigations over the last two years; therefore, Plaintiff had no basis to request a hearing on these temporary measures.

Defendant incorrectly relies on *Callaghan v. US Center for Safe Sport*, No. 2:18-cv-336-FtM-99CM, 2018 WL 4107951, at *5 (M.D. Fla. Aug. 29, 2018), for the proposition that Plaintiff must pursue his claims through arbitration. (Dkt. 8-1 at 14-16.) *Callaghan* addresses the suspension of figure skating coach Richard Callaghan in March 2018, for an alleged relationship with a figure skater from 1985 to 1999. 2018 WL 4107951, at *1. After an abbreviated investigation, Defendant SafeSport issued interim measures suspending Callaghan from participation in the

RESPONSE TO MOTION TO DISMISS

sport. *Id*. *2. Callaghan initially requested, but later withdrew, a request to arbitrate his suspension, instead filing his civil lawsuit. *Id*.

Here, Plaintiff immediately requested arbitration on the lone occasion he had the actual right to seek arbitration of the claim made against him; in response, Defendant failed to timely provide the hearing and instead withdrew its suspension. (Dkt. 1-7 at ¶¶ 6, 33.) As such, there remains no decision "**materially affect[ing] the opportunity to participate (e.g., suspension)**" that could justify a request for arbitration from Plaintiff. (SafeSport Code § XIV(40)(a) (Dkt. 8-3 at 42; emphasis added).) Callaghan filed claims for breach of contract and declaratory relief but did not assert claims that SafeSport acted with malice (as permitted by the statute that was enacted a month earlier). Plaintiff, on the other hand, has pleaded detailed and compelling facts supporting Defendant's malicious and retaliatory persecution of him, which includes targeting him with numerous manufactured claims and a deliberate disregard for Plaintiff's rights to due process. 36 U.S.C. § 220541(d)(1) and (2).

The court's analysis in *Callaghan* presumed Defendant has a specialized investigatory process conducted by individuals with expertise in fairly adjudicating allegations of abuse. 2018 WL 4107951, at * 5. Here, conversely, the well-pleaded facts of this case plausibly allege bias, which excuse Plaintiff from any exhaustion requirement even if Plaintiff did have an option to pursue administrative remedies (which he does not). "[A]n administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it." *United States v. Connell*, 613 F. Supp. 3d 1227, 1233 (N.D. Cal. 2020) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992)). Plaintiff's First Amended Complaint demonstrates Defendant's bias and predetermination of the issues: Defendant's investigation is retaliatory persecution of Plaintiff. (*Supra*,

sections II and IV(A).). Therefore, any exhaustion of administrative remedies requirement would be excused even if administrative remedies were available here.

It is also noteworthy that no applicable code provisions afford Plaintiff the right to petition an arbitrator for imposition of damages against Defendant arising from intentional infliction of emotional distress. Arbitrations are for eligibility determinations, which are not at issue here, not for the award of monetary damages against Defendant for its malicious conduct. Unlike his rights in this Court, Plaintiff has no foundation for an arbitration against Defendant for civil remedies. In short, no exhaustion of remedies requirement applies because there is no right, much less a requirement, to address Defendant's egregious abuse of process by administrative process prior to, or instead of, the advancement of this litigation.

### C. Defendant's Malicious Refusal to Establish and/or Follow Procedures Supporting Due Process, rather than Rendering an Eligibility Decision, Serves as the Foundation of This Case.

Given Defendant's failure and refusal to render an eligibility determination, this litigation does not seek "to re-adjudicate the Center's processes and decisions regarding eligibility," as Defendant contends. (Dkt. 8-1 at 16-18.) Unlike *Sanderson v. U.S. Ctr. For SafeSport, Inc.*, No. 21-cv-01771-CMA, 2021 WL 3206322, at *3-4 (D. Colo. July 29, 2021), and the other cases cited by Defendant, there is no dispute on eligibility after the lifting of Plaintiff's temporary suspension. Plaintiff remains eligible to train Olympic athletes and orchestrate horse shows, all of which have been approved by the United States Equestrian Federation. Instead of a determination of eligibility, which is not an issue here, Plaintiff requests that the Court award actual and exemplary damages for Defendant's actual malice underlying its pseudo-investigation and the deprivation of Plaintiff's rights to due process in violation of the SafeSport Code. Again, ignoring the 2018 amendment to the SafeSport Act removing any limitation on liability for claims premised on "actual malice," Defendant steadfastly refuses to acknowledge that it is subject to liability

for violations of state law. (Dkt. 8-1 at 17-18.) Unlike the analysis in *Sanderson*, Plaintiff has alleged such malice including separate tortious acts which give rise to liability outside the scope of its proper administrative scheme. 2021 WL 3206322, at *4. Despite having no basis to accuse Plaintiff of any misconduct, Defendant damaged Plaintiff's reputation with a retaliatory prosecution of additional claims, belatedly withdrew a suspension that never should have been imposed, refused to administratively close the now two-year-old investigation, and caused Plaintiff to suffer grave and undue emotional distress. Overall, there have been no temporary measures, findings, or decisions that could be the subject of a "readjudication."

Defendant also mistakenly relies on *Slaney v. Int'l Amateur Athletic Federation*, 244 F.3d 580 (7th Cir. 2001). (Dkt. 8-1 at 16, 18.) As in the majority of cases cited by Defendant, *Slaney* pre-dates the SafeSport Act and its exception specifically removing any limitation for claims against Defendant arising from its actual malice. 36 U.S.C. § 220541(d)(2). Again, an eligibility determination is at the heart of the *Slaney* opinion, but not at issue in this case. 244 F.3d at 586. Slaney, an Olympic runner, became involved in a doping scandal arising from her elevated testosterone levels, and she was *suspended* by the International Amateur Athletic Federation ("IAAF"). *Id.* at 586-87. Slaney took the IAAF's decision to a hearing before the United States of America Track and Field, Inc. ("USATF") Doping Hearing Board. *Id.* at 587. The USATF board found in favor of Slaney, and the IAAF appealed the board decision to arbitration. Slaney participated in the arbitration but later withdrew prior to the panel's decision. *Id.* Ultimately, the IAAF arbitration panel ruled that Slaney had committed a doping offense and *suspended* her. *Id.* at 589. Slaney then sought to relitigate the claims in a district court in the Southern District of Indiana, which dismissed her case. *Id.* at 587-88. Appropriately, the Seventh Circuit refused to relitigate the subjects of the arbitration and affirmed the

dismissal of claims against the IAAF. *Id*. at 601.[8] In contrast to the facts underlying the *Slaney* opinion, not only is there no eligibility decision here to challenge, but Plaintiff, who remains eligible to participate in his sport, is exclusively pursing state law claims for Defendants' malicious and retaliatory conduct.

### D. Defendants' "Private Right of Action" Argument is Irrelevant: Plaintiff Only Pleads Claims Arising Under State Law.

Plaintiff has the common-law right to pursue state law claims, and the SafeSport Act explicitly states that it ***does not limit liability*** for any claims in which Defendant "acted with actual malice" (*supra*, section IV(A)). Because Plaintiff's claims arise exclusively under state law, Defendant's argument that the SafeSport Act does not give rise to a private right of action for violation of specific duties listed in the statute is irrelevant. 36 U.S.C. § 220541(a)(2)(C) ("Duties of the Center," "[n]othing ***in this subsection*** shall be construed . . . to give rise to a claim under state law or to create a private right of action"). Stated differently, Plaintiff cannot cite to the breach of 36 U.S.C. § 220541(a)(1) as grounds for proof that Defendant's conduct constitutes negligence per se or a foundation for other claims. *Miller v. Bank of Am., N.A.*, No. 1:21-CV-00337-JLT, 2022 WL 3704093, at *4 (E.D. Cal. Aug. 26, 2022) ("The doctrine of negligence per se does not provide a private right of action for violation of a statute."); *Harding v. U.S. Figure Skating Ass'n*, 851 F. Supp. 1476, 1480 (D. Or. 1994) (finding that the preceding version of the Amateur Sports Act did not provide a private right of action, but could potentially be subject to state court claim and serve as grounds for injunctive relief).

---

[8] The court also held that it lacked subject matter jurisdiction to adjudicate Slaney's state law claims against the U.S. Olympic Committee ("USOC"), "finding that those claims were preempted by Congress's grant of exclusive authority to the USOC to determine the eligibility of American athletes." *Id.*

Several subsections later, in the context of Defendant's "limitation on liability" argument, the statute provides that "[n]othing ***in this chapter*** shall be construed to create a private right of action." 36 U.S.C. § 220541(d)(3)(B) (emphasis added). Once again, this simply means that Defendant's violation of its duties under the code does not provide an independent cause of action. Significantly, section 220541(d)(3)(B) does not disclaim a right to litigate claims that arise from Defendant's "actual malice." There is no restriction under the statute to prohibit advancement of a "claim under State law." *Compare* 36 U.S.C. § 220541(a)(2)(C) to 36 U.S.C. § 220541(d)(3)(B).

This limiting language does not mean that Plaintiff has no right to pursue the claims articulated here; it merely dictates that Plaintiff's state law claims must arise from something other than the "Duties of the Center" subsection of the enacting statute. 36 U.S.C. § 220541(a)(2)(C). Plaintiff's detailed allegations amply demonstrate that his claim of intentional infliction of severe emotional distress is firmly grounded in Defendant's actual malice and retaliatory pursuit of groundless claims against him. 36 U.S.C. § 220541(d)(2).

### E.  Plaintiff's Claims Do Not Arise from an Eligibility Decision.

Defendant inaccurately claims that it is "absolutely immune" from suit for exercising its prosecutorial and adjudicatory authority as to eligibility decisions. (Dkt. 8-1 at 21-22.) Defendant's argument clearly fails based on the facts underlying this case as well as the plain language of the SafeSport Act. Here, there is no eligibility decision at the heart of the case. Defendant has failed and/or refused to render such a decision after more than two years (and for months even after the filing of this litigation). Additionally, where, as here, Defendant's persecution of Plaintiff is motivated by actual malice, Congress has explicitly abrogated any limit on Defendant's liability for its wrongs through litigation. 36 U.S.C. § 220541(d)(2). Indeed, it is difficult, if not impossible, to contemplate a set of facts that could more

clearly plead "actual malice" than the detailed allegations, supported by actual internal documents, alleged here. This case is exactly the situation in which Congress intended SafeSport should not receive any immunity or limitation on liability when it enacted the "actual malice" exception.

The unique facts of this case are not comparable to the authorities on which Defendant relies. For example, Defendant mistakenly relies on *Gilbert v. U.S. Olympic Comm.*, No. 18-cv-00981-CMA-MEH, 2019 WL 10252758 (D. Colo. March 6, 2019), for claims of prosecutorial immunity. (Dkt. 8-1 at 21-22.) Again, *Gilbert*, like every other case on which Defendant relies, arises from an eligibility decision with <u>no</u> allegation of actual malice. The facts underlying *Gilbert* are not analogous to this case. There, Steven and Jean Lopez, "prominent members of the United States taekwondo community," received a lifetime ban from the sport for a "decades long pattern of sexual misconduct." 2019 WL 10252758, at *1-2. Jean Lopez ("Lopez") appealed the suspension. When the plaintiffs, who were complainants in Lopez's case, refused to present live testimony at the Lopez appeal, Defendant elected not to go forward with the appeal and reinstated Lopez. *Id*. at *2. The plaintiffs claimed that the eligibility decision caused damage to their reputations as well as distress. With no underlying allegations of actual malice, Defendant claimed that it was immune from suit for its determination of Lopez's eligibility. *Id*. at *3. The court likened the case to a prosecutor's immunity from suit by a victim after a failure to convict the accused. *Id*. at *4. Such an analogy does not apply here, where Defendant refuses to take action on contrived claims arising from a malicious persecution of Plaintiff. If Defendant were entitled to "prosecutorial immunity" despite its actual malice, the waiver of the limitation of liability (36 U.S.C. § 220541(d)(2)) would have no purpose.

**F.  Defendant's Outrageous Conduct is a Proper Foundation for Plaintiff's Claim for Intentional Infliction of Emotional Distress.**

**1.  Plaintiff Has Alleged Detailed Facts Showing Defendant's Outrageous Conduct, Which Is a Question of Fact for the Jury.**

Dismissal of Plaintiff's claims would be improper given the extensive evidence that Defendant has abused its power to advance its agenda against Plaintiff. Defendant's malicious persecution of Plaintiff, its deliberate disregard of the evidence, its coercion of witnesses, its failure to follow its own processes, and its refusal to dismiss the disproven allegations all qualify as a proper foundation for Plaintiff's cause of action for intentional infliction of emotional distress. "A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Duronslet v. Cty. of Los Angeles*, 266 F. Supp. 3d 1213, 1218 (C.D. Cal. 2017) ("[w]hether conduct is 'extreme and outrageous' is a question of fact for a jury to resolve unless reasonable minds could not differ on the issue." *Id.* at 1219 (citation omitted)). For example, "[a] purposeful policy of delay or a concerted cause of conduct can provide a basis for a claim for [intentional infliction of emotional distress]." *Jones v. AIG Risk Mgmt., Inc*., 726 F. Supp. 2d 1049, 1059 (N.D. Cal. 2010). "This is particularly true where, as here, it is alleged that the defendants were aware of the plaintiff's particular vulnerability." *Id*. In this case, Defendant was aware of the damage its deliberate delay and other misconduct caused to Plaintiff's personal and professional relationships. (Dkt. 1-7 at ¶ 50.)

"Generally, conduct will be found to be actionable where the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Helgeson v. Am. Int'l Group, Inc*., 44 F. Supp. 2d 1091, 1095 (S.D. Cal. 1999). "Behavior may be considered outrageous if a defendant: (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries

through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." *Progressive West. Ins. Co. v. Dallo*, 2008 WL 413752 (S.D. Cal. Feb. 14, 2008); *Kindley v. Flagstar Bank*, No. 04-CV-0319-IEG (WMC), 2004 WL 5631084, at *3 (S.D. Cal. Oct. 28, 2004) ("conduct arising from defendant's abuse of actual or apparent authority over the plaintiff may be considered 'extreme and outrageous conduct' for the purpose of an intentional infliction of emotional distress claim").

Defendant's behavior is outrageous particularly in its abuse of the power entrusted to it for the benefit of participants in amateur sports. *Chaconas v. J.P. Morgan Chase Bank*, 713 F. Supp. 2d 1180, 1188 (S.D. Cal. 2010) (noting that debt collection agencies hold a special position of authority over debtors that can contribute to the outrageousness of their conduct); *Tarr v. Narconon Fresh Start*, 72 F. Supp. 3d 1138, 1143 (D. Nev. 2014) (noting same as to religious organization and drug rehabilitation facility); *Jones*, 726 F. Supp. 2d at 1059 (noting same as to insurance agency); *Garcia v. U.S.*, 77 F.3d 488, at *2 (9th Cir. 1996) (reversing dismissal of intentional infliction of emotional distress claim where employer held special position of authority over the plaintiff). "The average citizen on the street would find such abuse of power, conducted under the guise of governmental authority, outrageous." *Wilhelm v. Knox Cty., Ohio*, No. 2:03-CV-786, 2005 WL 1126817, at *17 (S.D. Ohio May 12, 2005). As alleged in detail in the complaint, Defendant has abused its public trust, and such conduct supports a finding of intentional infliction of emotional distress, which should be submitted as a question of fact to the jury. (Dkt. 1-7 ¶ 13.)

Defendant's contrived investigations for verbal harassment are facially outrageous because Plaintiff's conduct does not rise to the level of "harassment" as defined under the SafeSport Code. Under the SafeSport Code, to constitute "harassment," the underlying *repeated or severe* conduct must (a) cause fear,

humiliation, or annoyance, (b) offend or degrade, (c) create a hostile environment,[9] (d) reflect discriminatory bias, or (e) violate federal or state law. The unfounded allegations simply do not support the charge of harassment under the SafeSport Code. (SafeSport Code § IX(D)(5) (Dkt. 8-3 at 15).) It is also noteworthy that "[c]onduct may not rise to the level of [h]arassment if it is merely rude (inadvertently saying or doing something hurtful), mean (purposefully saying or doing something hurtful, but not as part of a pattern of behavior), or arising from conflict or struggle between persons who perceive they have incompatible views or positions." (*Id.*) Plaintiff's alleged conduct does not remotely resemble the code's definition of harassment; therefore, Defendant's groundless persecution of Plaintiff constitutes the type of outrageous conduct that is actionable as intentional infliction of emotional distress.

### 2. Plaintiff Has Adequately Alleged Actual Malice, Which Is a Question of Fact for the Jury.

The determination of whether officials acted with malice "is a question of fact not properly decided on a motion to dismiss." *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1183 (E.D. Cal. 2005); *see also Gressett v. Contra Costa Cty.*, No. 12-cv-3798-EMC, 2013 WL 6671795, at *6 (N.D. Cal. Dec. 18, 2013) (denying a motion to dismiss "because the issue of 'actual malice' is a question of fact inappropriate to resolve at this early stage of the proceedings"); *Miller v. Watson*, No. 3:18-cv-00562-SB, 2019 WL 1871011, at * 6 n.10 (D. Or. Feb. 12, 2019) (same). Plaintiff

---

[9] A "hostile environment" requires misconduct that is "sufficiently severe, persistent, or pervasive such that it interferes with, limits, or deprives any individual of the opportunity to participate in any program or activity. Conduct must be deemed severe, persistent, or pervasive from both a subjective and an objective perspective." SafeSport Code § IX(C)(1)(b) (Dkt. 8-3 at 9). "[T]he perceived offensiveness of a single verbal or written expression, standing alone, is typically not sufficient to constitute a hostile environment." *Id.*

can support his claims of actual malice through categories of evidence, such as: (1) failure to investigate and verify the facts of the alleged statement; (2) purposeful avoidance of truth, or inaction; (3) averring to a failure to investigate. *Warren v. WinCo Foods, LLC*, No. 1:22-cv-00594-SAB, 2022 WL 3026785, at *21 (E.D. Cal. Aug. 1, 2022).

A determination about "malice" is subjective and must be resolved by the fact finder. *Harmon v. City of Glendale*; 2007 WL 97065554, at *4 (C.D. Cal. Dec. 19, 2007); *Black v. Correa*, No. 07–00299 DAE–LEK, 2007 WL 3195122, at *12 (D. Haw. Oct. 30, 2007) (noting that "malice is a question of fact for the jury"); *see also Laizure v. Washington Cty. by and through Tran*, No. 3:17-cv-01254-SB, 2019 WL 6120492, at *4 (D. Or. Nov. 18, 2019) (the existence of malice "is always a question of fact exclusively for the determination of the jury").

In *Gasho v. United States*, the Ninth Circuit reversed a summary judgment dismissal of a claim for intentional infliction of emotional distress. 39 F.3d 1420 (9th Cir. 1994). The district court had found there was no compelling evidence of malice to support the plaintiffs' claim. *Id*. at 1425. The Ninth Circuit disagreed and reversed, finding sufficient evidence that the underlying arrests may have been motivated by malice, including deposition testimony that a customs supervisor arrested the plaintiffs because they "made us mad." *Id*. at 1434. Another customs agent declined to get involved in the arrest because he had a "bad feeling about the situation." *Id*. If the facts in *Gasho* support a finding of malice, there can be no dispute but that a similar finding is warranted in this case as well.

## G. Defendant's Failure to Follow Its Own Processes Serves as a Proper Basis for Declaratory Relief.

Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving

rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984). A declaratory relief claim operates "prospectively," not to redress past wrongs. *Britz Fertilizers, Inc. v. Bayer Corp*., 665 F.Supp.2d 1142, 1173 (E.D.Cal.2009). As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *see also Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937) (holding that declaratory relief is available to resolve "definite and concrete" controversies.) A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co*., 655 F.2d 938, 943 (9th Cir. 1981).

In this case, Plaintiff seeks declaratory and injunctive relief to address Plaintiff's rights under the SafeSport Act. Plaintiff is specifically entitled to a "*swift* resolution" of the claims against him. 36 U.S.C. § 220503(8) (emphasis added). Further, Defendant is obligated to implement procedures for the timely and proper handling and resolution of clams against Plaintiff as well as providing him the "opportunity to be heard." 36 U.S.C. §§ 220541(a)(1)(C), (D), and (E). Defendant has failed to follow its statutory mandate. Plaintiff seeks declaratory relief that Defendant has such obligations. *Rhoades v. Avon Prods., Inc*., 504 F.3d 1151, 1166 (9th Cir. 2007). Defendant's failure to act in accordance with statutes and its administrative code has occurred as a result of its actual malice towards and intent to harm Plaintiff, to violate his rights, and to place his health, well-being, and safety at risk. (Dkt. 1-7 ¶ 61.) Unlike *Slaney*, for example, this case does involve allegations that Defendant's conduct contravened its own guidelines. 244 F.3d at 596.

1
2
3
4
5
6
7
8
9
10
11
12

Again, Defendant mistakenly relies on a case involving a decision about the eligibility of a coach or trainer. (Dkt. 8-1 at 27.) In this instance, Defendant relies on *Lee v. U.S. Taekwondo Union*, 331 F. Supp. 2d 1252 (D. Haw. 2004), a case in which the head coach of the U.S. Olympic Taekwondo team sought to compel his reinstatement to the team. In *Lee*, the court noted that the plaintiff was "seeking something more than preservation of the status quo" and denied the request for preliminary injunctive relief. Here, on the other hand, Plaintiff does not request to maintain the status quo or to reverse an eligibility decision. Acting with malice to the rights and remedies due to Plaintiff, Defendant has steadfastly refused to implement and follow procedures that should otherwise allow for the swift resolution of claims against him in compliance with the SafeSport Act. 36 U.S.C. § 25041(a)(1)(C) and (D).

13
14

## V.  CONCLUSION

15
16

For the reasons stated herein, the Court should deny Defendant's Motion to Dismiss (Dkt. 8).[10]

17
18
19
20
21
22
23
24
25
26
27
28

---

[10] Should the Court determine to grant Defendant's motion in any part, the Court should grant Plaintiff leave to amend to correct any defects in his Complaint. *See Polich v. Burlington Northern, Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) (noting that where a motion to dismiss is granted, a district court should grant leave to amend unless it is clear the complaint cannot be saved by amendment). As a general rule, when a court grants a motion to dismiss, the court should dismiss the complaint with leave to amend; the policy favoring amendment is to be applied with "extreme liberality." *McKee v. Gen'l Motors Co.*, 601 F. Supp. 3d 901, 910-11 (W.D. Wash. 2022) (citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003).

Dated: April 21, 2023        Respectfully submitted,


By: */s/ Michael A. Caddell*
      Michael A. Caddell (SBN 249469)
      mac@caddellchapman.com
      Cynthia B. Chapman (SBN 164471)
      cbc@caddellchapman.com
      Amy E. Tabor (SBN 297660)
      aet@caddellchapman.com
      John B. Scofield, Jr. (pro hac vice)
      jbs@caddellchapman.com
      CADDELL & CHAPMAN
      P.O. Box 1311
      Monterey CA 93942
      Tel.: (713) 751-0400
      Fax: (713) 751-0906

      *Attorneys for Plaintiff*